STATE of Tennessee, Appellee,

v.

Gerald JONES, Appellant.

Court of Criminal Appeals of Tennessee, at Nashville.

July 30, 1981.

Permission to Appeal Denied by Supreme Court Oct. 26, 1981.

Raymond W. Fraley, Jr., Fayetteville, for appellant.

William M. Leech, Jr., Atty. Gen., James A. DeLanis, Asst. Atty. Gen., Nashville, James S. Kidd, Dist. Atty. Gen., Fayetteville, Jack Bomar, Asst. Dist. Atty. Gen., Shelbyville, William Michael McCown, Asst. Dist. Atty. Gen., Fayetteville, for appellee.

OPINION

DWYER, Judge.

This is an appeal of right from a conviction for committing arson, T.C.A. § 39–501, with confinement for not less than six nor more than ten years.

There is an issue as to the sufficiency of the evidence, so we will relate it as found from our review of the record. It is established that the jury by its verdict of guilt has resolved the conflicts in the witnesses' testimony and the State is entitled to the strongest legitimate view of the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn.1978). The burden is on the appellant to demonstrate that the evidence preponderates against the verdict and in

favor of his innocence. *State v. Townsend*, 525 S.W.2d 842, 843 (Tenn.1975).

The appellant's residence located on Highway 64 in Lincoln County burned to a total loss during the night hours of October 22, 1978. The volunteer fire fighters from the Flintville Community in Lincoln County answered three separate alarms. The first two fires occurred in separate bedrooms. The third fire, which engulfed the whole house, intensified when water was sprayed on the house. It was revealed that such activity indicates that a flammable substance was present.

An expert arson investigator for the State testified that a five-gallon can containing gasoline and diesel fuel was found behind the house. Debris collected by him from the ruins and analyzed at the crime laboratory revealed a flammable fluid consisting of diesel fuel. From his investigation, he concluded that this was an act of arson.

Sandra Kelley, the appellant's daughter, in testifying as a witness for the State, related that appellant had told her husband Kenny Taylor on the date of the fire that he would give him $500 to burn the house. The record reflects Kenny Taylor had been convicted for burning the house prior to appellant's trial. The daughter also testified that her father had set fire to their prior home in Alabama in 1974 to collect money from the insurance company to build another home.

There was evidence the appellant had his house insured on September 8, 1978. On the afternoon before the fire another witness for the State related appellant had informed him about his new insurance policy and that he was pleased with it.

The evidence further reflected that the appellant was taken from the scene of the first fire supposedly because of smoke inhalation; however, a volunteer fireman related his actions were not compatible with a person overcome by smoke. A neighbor's wife heard a car with a loud muffler pull into appellant's drive before the third fire. She also testified that Kenny Taylor drove a car with a loud muffler.

Appellant's insurance agent testified that he called her from the hospital the morning after the fire and made inquiries about his policy.

A neighbor of appellant's related that after the fire while negotiating for the purchase of appellant's land, the appellant told him that his son-in-law Kenny Taylor was worrying him to death for the $500 that appellant owed him.

The appellant did not testify but offered other witnesses, such as his daughters, sons-in-law, and his mother who among other things contradicted the testimony of Sandra Kelley regarding the 1974 fire and the removal of items from the house prior to the fire in question. Appellant's mother testified that she overheard Sandra tell her husband she hoped he would go to prison for what he did to Gerald's (Mr. Jones) house. Proof was also placed in the record to show animosity existed between Sandra and the appellant because he did not testify favorably for Kenny Taylor at his trial.

Appellant's prior insurance agent related that the appellant had told her about his previous fire and a news reporter at the scene of the fire testified that the appellant was choking and appeared to be in grave danger.

From the circumstantial and direct evidence the jury could and did infer (1) that appellant paid Kenny Taylor to burn his home; (2) that Sandra Taylor testified truthfully when she related her father offered her husband $500 to burn the house since her testimony was corroborated when the neighbors testified that after the fire appellant said he needed $500 to pay Kenny Taylor; (3) the five-gallon can found behind appellant's house contained diesel fluid; (4) a flammable substance was present in the house as indicated by the intense flames and the debris; (5) three separate fires were set on the same evening in the same residence. These facts are sufficient to make out the offense of arson and there is enough proof to convince a rational trier of fact of appellant's guilt beyond a reasonable doubt. T.R.A.P. 13(e). The first issue is overruled.

■ Appellant contends that the trial court erred in allowing Sandra Kelley to testify that she had witnessed her father and brother-in-law in 1974 burn their home in New Market, Alabama, and with the insurance from that fire built another home. Various reasons have been set forth in an attempt to show prejudicial error in allowing proof of another crime such as remoteness in time and the fact that the uncorroborated testimony came from appellant's disgruntled daughter. We, however, are of the opinion that the evidence was competent to show intent and motive, *Bunch v. State*, 605 S.W.2d 227, 229 (Tenn. 1980), and therefore admissible. This issue is overruled.

Next the appellant complains the trial court erroneously limited his cross examination of Sandra Kelley. This came about in this manner. Sandra's husband had written her a letter while he was confined in jail, saying, ". . . that was not pot or it didn't taste like pot. Who did you get it from, Sandra?" The State and the appellant both rely on *State v. Morgan*, 541 S.W.2d 385 (Tenn.1976). It is appellant's position that the court should have allowed cross examination as to this act for it would cast doubt on her credibility as a witness. The State counters pointing out the use or possession of marijuana is not a proper subject for cross examination because it bears no relation to the witness's veracity. *Martin v. State*, 584 S.W.2d 830, 834 (Tenn.Cr.App. 1979).

■ While the use or possession of marijuana may not bear a relation to the witness's veracity, the smuggling of contraband into the jail would. The trial court erred in limiting the cross examination of this witness; this does not conclude the matter. There was no offer of proof as to how the witness would have answered the inquiry regarding smuggling. Under *Morgan, supra*, p. 38, an answer in either direction would have been conclusive. In light of the corroboration of Ms. Kelley's

testimony regarding the $500 offer made by the appellant to her husband,* the error did not affect the results. T.R.A.P. 36(b). This issue is overruled.

■ As his fourth issue, appellant with reliance on *Grooms v. State*, 221 Tenn. 243, 245, 426 S.W.2d 176 (1967), urges that his conviction is invalid because the minutes show that he was convicted by a jury composed of only eleven jurors. There is no merit in this issue. The minutes reflect a jury of twelve was respited on the first day of the trial including a juror by the name of "Cleveland Shelton". The minute entry of conviction shows the jury was composed of eleven full names but only the single name of "Cleveland". It is obvious, unlike *Grooms, supra*, (thirteen jurors were listed) that here the typing clerk omitted the last name "Shelton". Under such circumstances it would be sheer folly to remand this record for the insertion of Cleveland Shelton's last name. *Wheeler v. State*, 539 S.W.2d 812 (Tenn.Cr.App.1976). This issue is overruled.

■ Finally, appellant asserts the trial court failed to comply with applicable law in denying probation. Initially we point out that T.R.A.P. 24(b) requires that:

". . . the appellant shall have prepared a transcript of such parts of the evidence or proceedings as is necessary to convey a fair, accurate and complete account of what transpired *with respect to those issues that are the bases of appeal*." (Emphasis added.)

In the absence of a transcript supporting appellant's contentions we can presume that the evidence supports the trial court's denial of probation. This issue is overruled.

The judgment of the trial court is affirmed.

DAUGHTREY and BYERS, JJ., concur.

---

* As mentioned within, appellant told his neighbor that he needed $500 to pay Kenny Taylor, his son-in-law.