IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

JUNE 1998 SESSION



FILED

August 14, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellee, | ) | No. 03C01-9707-CR-00252 |
| | ) | |
| | ) | Hamilton County |
| v. | ) | |
| | ) | Honorable Stephen M. Bevil, Judge |
| | ) | |
| ALGERNON WILLIE RICE, | ) | (Second degree murder) |
| | ) | |
| Appellant. | ) | |

For the Appellant:

Ardena J. Garth
District Public Defender
    and
Richard K. Mabee
Assistant Public Defender
701 Cherry Street, Suite 300
Chattanooga, TN 37402
(AT TRIAL)

Ardena J. Garth
District Public Defender
    and
Donna Robinson Miller
Assistant Public Defender
701 Cherry Street, Suite 300
Chattanooga, TN 37402
(ON APPEAL)

For the Appellee:

John Knox Walkup
Attorney General of Tennessee
    and
Clinton J. Morgan
Assistant Attorney General of Tennessee
425 Fifth Avenue North
Nashville, TN 37243-0493

William H. Cox, III
District Attorney General
    and
Bates W. Bryan, Jr.
Assistant District Attorney General
600 Market Street, Suite 310
Chattanooga, TN 37402

OPINION FILED:_____

AFFIRMED

Joseph M. Tipton
Judge

**O P I N I O N**

The defendant, Algernon Willie Rice, appeals as of right from his conviction upon a guilty plea in the Hamilton County Criminal Court for second degree murder, a Class A felony. The trial court sentenced the defendant as a Range I, standard offender to twenty years in the Department of Correction. The defendant contends that the trial court erred by applying enhancement factors and by failing to consider mitigating factors. We affirm the judgment of conviction.

This case involves the stabbing death of Amy Simon, an eighty-six-year-old neighbor of the defendant. The defendant was charged with first degree murder, and he entered a guilty plea to second degree murder pursuant to an agreement.

At the sentencing hearing, the defendant testified that he had no prior felony convictions, but he admitted that he had been convicted of assault and battery approximately ten years earlier. The defendant denied his guilt for this prior conviction. He said that he stayed at a mental health facility for thirty days after the commission of the assault and battery. He stated that he had received psychiatric treatment all of his life and that he had to take medicine for a nerve condition. The defendant explained that he was in a wreck that caused brain damage and resulted in nineteen operations. The defendant admitted that he had drug and alcohol problems and that he received treatment for his addictions. Regarding his employment history, the defendant testified that he had tried to work but that he was unable to do so because he suffered from arthritis and back pain. The defendant denied killing the victim, who he described as being like his aunt, and he claimed that he would never hurt anyone. The defendant claimed that he was at the wrong place at the wrong time.

2

On cross-examination, the defendant testified that on the night of the offense, he drank some beer and then went to the victim's apartment to tell her to turn her television down because the volume was too loud. He stated that the victim's apartment door was open a little. The defendant said that when he knocked on the door, it opened and he saw the victim lying face down in blood. He testified that he asked two neighbors for help and that one of the neighbors called the ambulance. The defendant testified that he then left with his brother.

The defendant testified that he was questioned on three occasions regarding the victim's death. He said that on the first two occasions, he told the officers that he did not kill the victim. He acknowledged that he told the officers during the first questioning that he had been cutting pork and during the second questioning that he had been cutting chicken. The defendant testified that he confessed when questioned the third time. The defendant testified that he did not stab the victim. The defendant claimed that he lied when he told the officers that he killed the victim because he was intoxicated, medicated and scared. He stated that he told the officers that he had been drinking and taking medication on the night of the offense.

The defendant acknowledged that he gave a statement to police detailing that the victim said, "Oh, my God," when he stabbed her, but he claimed that he concocted the story. He said that he also made up other statements that he told the officers, including that he went back to his apartment, rinsed off the knife, went back to the victim's apartment, and called the police. The defendant asserted that the knife did not have any blood on it. The defendant testified that he did not have an explanation for why he made up the details of the crime.

John Rice, the defendant's brother, testified that he was paralyzed as a result of an accident two years earlier. He stated that the defendant cared for him. He

3

said that the defendant had been a good brother to him. He stated that the defendant had mental problems.

The presentence report reflects that the then thirty-seven-year-old defendant graduated from high school and that he was unemployed. It shows that the defendant denied committing the crimes and claimed that he confessed to killing the victim after repeated questioning because he had a bad nervous condition. The report states that the defendant had been treated several times for mental problems resulting from an automobile accident when he was two years old. The report describes the defendant's psychiatric history as extensive. The presentence report states that the defendant's medical records are attached to the report. However, the medical records are not included in the record on appeal. The report reflects that the defendant said that he was in poor health, suffering from arthritis, back problems, and poor nerves. He also reported that he began drinking alcohol at the age of twelve, and he said that he drank as much as a case and a half of beer at a time, even while taking medication. The defendant said that he began using crack cocaine at the age of twenty-seven and that he used it as often as possible, at least three times a week. It states that the investigating officer did not believe that the defendant planned to kill the victim. The presentence report reflects that the defendant had no prior felony convictions but that he had been convicted of a misdemeanor assault and battery in 1987.

At the conclusion of the sentencing hearing, the trial court sentenced the defendant as a Range I, standard offender to twenty years in the Department of Correction. In sentencing the defendant, the court found that the statement given by the defendant to police accurately reflected the events that occurred on the night of the offense. It determined that the defendant's testimony was not truthful. It applied the following enhancement factors pursuant to T.C.A. § 40-35-114:

4

> (1) the defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;
>
> (4) the victim was particularly vulnerable because of age; and
>
> (9) the defendant possessed or employed a deadly weapon during the commission of the offense.

In applying factor (4), the trial court stated that although age does not by itself show vulnerability, it believed that judicial notice may be taken of the fact that an eighty-six-year-old person is not able to defend himself or herself and is less likely to survive an attack. With respect to mitigation, the trial court found that the defendant suffered from a mental or physical condition that reduced his culpability for the offense. See T.C.A. § 40-35-113(8).

Appellate review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d). As the Sentencing Commission Comments to this section notes, the burden is now on the defendant to show that the sentence is improper. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

However, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In this respect, for the purpose of meaningful appellate review,

> the trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting

5

each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. T.C.A. § 40-35-210(f) (1990).

State v. Jones, 883 S.W.2d 597, 599 (Tenn. 1994). In conducting a de novo review, we must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf and (7) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-102, -103 and -210; see Ashby, 823 S.W.2d at 168; State v. Moss, 727 S.W.2d 229, 236-37 (Tenn. 1986).

The defendant contends that the trial court erred by applying enhancement factors (1) and (4) and by failing to consider in mitigation the defendant's lack of a felony record and the defendant's caring for his siblings. See T.C.A. § 40-35-113(13). He argues that the trial court did not properly weigh the enhancement and mitigating factors and that a minimum sentence was warranted under the circumstances of the case.

Initially, we note that the record on appeal does not contain a transcript of the guilty plea hearing at which the convicting evidence would have been presented by stipulation or testimony. In order for us to conduct a proper de novo review, the guilty plea hearing transcript should be made a part of the record on appeal. The defendant must prepare a transcript of the evidence that is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are raised on appeal. T.R.A.P. 24(b).

The defendant contends that the trial court erred by applying enhancement factor (1). He argues that one conviction for misdemeanor assault

6

occurring approximately ten years earlier did not demonstrate significant criminal history such as to require appropriate enhancement. We disagree. The proof showed that the defendant not only had a prior criminal conviction but also that he had a previous history of criminal behavior in that he used crack cocaine.

Next, the defendant asserts that the trial court erred by applying enhancement factor (4), the victim was particularly vulnerable because of her age. In making its sentencing determination regarding the application of factor (4), the trial court should consider whether the proof establishes that because of the victim's age or physical or mental attributes, the victim was unable to resist, summon help or testify at a later date. State v. Kissinger, 864 S.W.2d 482, 487 (Tenn. 1996); State v. Adams, 864 S.W.2d 31, 35 (Tenn. 1993); State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997). The state bears the burden of proving the victim's limitations that render him or her particularly vulnerable, in addition to the victim's age, relative to the offense committed. Adams, 864 S.W.2d at 35. It cannot be presumed that the victim was particularly vulnerable based solely on the victim's age. Poole, 945 S.W.2d at 98.

In this respect, we do not believe that the trial court could take judicial notice that the victim was particularly vulnerable solely because of her age, rather than relying upon the evidence. However, we cannot be certain that the circumstances disclosed at the guilty plea do not support such a finding. Absent a record of the guilty plea hearing, we are unable to perform a complete de novo review. Given the state of the record, we presume the trial court was correct in its determinations regarding factor (4). See State v. Jones, 623 S.W.2d 129, 131 (Tenn. Crim. App. 1981).

As for the defendant's argument that the trial court erred by failing to consider the defendant's lack of a prior felony record in mitigation, we disagree. The

7

defendant had a misdemeanor conviction and had a prior history of criminal behavior in that the defendant admitted using crack cocaine.

However, the trial court should have considered the defendant's contributions to the support of his family.  See State v. McKnight, 900 S.W.2d 36, 55 (Tenn. Crim. App. 1994) ("The defendant would normally be due some favorable consideration based upon his family contributions . . . .").  However, we hold that the mitigating factor is not entitled to much weight.

As for the defendant's argument that the trial court improperly weighed the enhancement and mitigating factors, we note that the weight to be afforded an existing factor is left to the trial court's discretion so long as it complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record.  T.C.A. § 40-35-210, Sentencing Commission Comments; Moss, 727 S.W.2d at 237; Ashby, 823 S.W.2d at 169.  The record before us supports the weight given to the applicable enhancement and mitigating factors by the trial court.  The record also supports the twenty-year sentence imposed by the trial court.

In consideration of the foregoing and the record as a whole, we affirm the judgment of conviction.

_____
Joseph M. Tipton, Judge

CONCUR:

8

_____
John H. Peay, Judge


_____
David G. Hayes, Judge